## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 29 2017, 10:20 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Steven Knecht
Vonderheide & Knecht, P.C.
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Christina D. Pace
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Austin D. Warren, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | June 29, 2017 <br><br> Court of Appeals Case No. <br> 91A04-1611-CR-2607 <br><br> Appeal from the White Superior Court. <br> The Honorable Robert B. Mrzlack, Judge. <br> Trial Court Cause No. <br> 91D01-1512-F5-142 |

**Barteau, Senior Judge**

## Statement of the Case

[1] Austin D. Warren pleaded guilty to two charges of failure to remain at the scene of an accident resulting in death, both Level 5 felonies. Ind. Code § 9-26-

1-1.1 (2015). Warren appeals his convictions and sentence, and we affirm in part, reverse in part, and remand.

## Issues

Warren raises two issues, which we restate as:

    I.      Whether his convictions violate his federal and state constitutional protections against double jeopardy.

    II.     Whether the trial court abused its discretion in imposing consecutive sentences.

The State raises a separate issue, which we restate as: whether Warren waived appellate review of his double jeopardy claims by pleading guilty.

## Facts and Procedural History

On the evening of October 11, 2015, Austin Warren and his brother were seen drinking alcohol at a bar. Later that evening, as Warren drove his truck in White County, he struck a car driven by Deborah Barkas. Barkas' thirteen-year-old daughter, H.O., was in the car. Warren's truck struck the driver's side of Barkas' car with sufficient force to push the car off the road and into a ditch, where it rolled onto its passenger side and struck a telephone pole before the truck collided with it a second time. Warren's truck was also heavily damaged, and an airbag deployed.

Warren got out of his truck and approached Barkas' car. He saw a large amount of blood. Warren briefly tried to open a car door and then fled on foot, pausing only to remove his license plate from his truck.

[6] Emergency responders arrived on the scene and extracted Barkas and H.O. from the car. Barkas was pronounced dead at the scene. H.O. was airlifted to a hospital but later died due to her injuries.

[7] A police officer found a receipt bearing Warren's name in the truck. Several officers went to Warren's home. He told the officers he had been drinking at home for most of the evening and, when informed that his truck had been involved in an accident, claimed it had been stolen. An officer smelled an odor of alcoholic beverages on Warren during their conversation. Meanwhile, back at the scene of the collision, officers collected DNA material from the truck's air bag. DNA testing of the material revealed a match with Warren's DNA.

[8] On December 18, 2015, the State charged Warren with two counts of failure to remain at the scene of an accident resulting in death, both Level 5 felonies. On June 21, 2016, Warren pleaded guilty to both charges without a plea agreement. The court determined that Warren's criminal history, his high risk to reoffend, and the nature and circumstances of the offense were aggravating factors. Warren's remorse and guilty plea were mitigating factors. The court sentenced Warren to three years on each count, to be served consecutively, for a total sentence of six years. This appeal followed.

## Discussion and Decision

### I. Waiver of Double Jeopardy Claims

[9] The State argues Warren waived the right to present his double jeopardy claims on appeal because he pleaded guilty. Warren responds that when a defendant

pleads guilty without a plea agreement, the defendant may raise double jeopardy claims on direct appeal.

[10] In general, a defendant who pleads guilty pursuant to an agreement with the State waives the right to raise a double jeopardy claim on appeal. *Mapp v. State*, 770 N.E.2d 332, 334 (Ind. 2001). By contrast, this Court has repeatedly held that when a defendant pleads guilty without a plea agreement, the defendant may raise a double jeopardy claim because he or she did not receive the benefit of a bargain with the State. *See Kunberger v. State*, 46 N.E.3d 966 (Ind. Ct. App. 2015); *Wharton v. State*, 42 N.E.3d 539 (Ind. Ct. App. 2015); *Graham v. State*, 903 N.E.2d 538 (Ind. Ct. App. 2009); *McElroy v. State*, 864 N.E.2d 392 (Ind. Ct. App. 2007), *trans. denied*.

[11] Warren pleaded guilty without a plea agreement and did not receive any tangible benefit. The State argues that Warren benefitted because the State truncated its investigation, which could have uncovered grounds for additional charges. This argument is too speculative to credit. The State further argues Warren received a benefit because he received advisory sentences for his offenses. Although the trial court determined Warren's guilty plea was a mitigating factor, the court did not single out that factor as justifying the advisory sentences. We conclude Warren has not waived his right to present his double jeopardy claims on appeal.

## II. Double Jeopardy

Warren argues one of his convictions should be vacated because he is being punished twice for committing only one wrong. The State contends two convictions are appropriate because two lives were lost.

Warren raises claims under the federal and state constitutions, but we address only the Indiana constitutional claim because it is dispositive. We review de novo whether a defendant's convictions subject him or her to double jeopardy. *Goldsberry v. State*, 821 N.E.2d 447, 458 (Ind. Ct. App. 2005). Article one, section fourteen of the Indiana Constitution provides, in relevant part, "No person shall be put in jeopardy twice for the same offense." The Indiana double jeopardy clause guards "against multiple punishments for the same offense in a single trial." *Wood v. State*, 999 N.E.2d 1054, 1065 (Ind. Ct. App. 2013), *trans. denied*. Two or more offenses are the same offense in violation of article one, section fourteen if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense. *Richardson v. State*, 717 N.E.2d 32, 49 (Ind. 1999).

At the time Warren committed his offenses, the governing statute provided, in relevant part:

> (a) The operator of a motor vehicle involved in an accident shall do the following:
>
> (1) immediately stop the operator's motor vehicle:
>
> (A) at the scene of the accident; or

(B) as close to the accident as possible in a manner that does not obstruct traffic more than is necessary.

(2) Remain at the scene of the accident until the operator does the following:

(A) Gives the operator's name and address and the registration number of the motor vehicle the operator was driving to any person involved in the accident.

(B) Exhibits the operator's driver's license to any person involved in the accident or occupant of or any person attending to any vehicle involved in the accident.

(3) If the accident results in the injury or death of another person, the operator shall, in addition to the requirements of subdivisions (1) and (2):

(A) provide reasonable assistance to each person injured in or entrapped by the accident, as directed by a law enforcement officer, medical personnel, or a 911 telephone operator; and

(B) as soon as possible after the accident, immediately give notice of the accident, or ensure that another person gives notice of the accident, by the quickest means of communication to one (1) of the following:

(i) The local police department, if the accident occurs within a municipality.

(ii) The office of the county sheriff or the nearest state police post, if the accident occurs outside a municipality.

(iii) A 911 telephone operator.

* * * * *

(b) An operator of a motor vehicle who knowingly or intentionally fails to comply with subsection (a) commits leaving the scene of an accident, a Class B misdemeanor. However, the offense is:

* * * * *

(3) a Level 5 felony if the accident results in the death of another person . . . .

Ind. Code § 9-26-1-1.1.

[15] In *Wood v. State*, Wood challenged his three convictions for failure to remain at the scene of a boating accident resulting in death or injury, claiming he was punished multiple times for one offense. Wood's boat had collided with another boat, killing two occupants and injuring one. A panel of this Court reviewed the governing statute in comparison with Indiana Code section 9-26-1-1.1 and concluded the wrongful act targeted by both statutes was leaving the scene of the accident, rather than "injury to a person or damage to a vehicle." 999 N.E.2d at 1065. The Court concluded Wood's act of leaving the scene could support only one conviction and remanded with instructions to the trial court to dismiss two of the three convictions.

[16] The holding in *Wood* relied heavily on the Court's holding in *Nield v. State*, 677 N.E.2d 79 (Ind. Ct. App. 2005). In that case, Nield was convicted of two counts of failure to stop after an accident involving injury or death. Nield struck two motorcyclists with her car, and she claimed the two convictions violated her rights against double jeopardy because there was only one accident. A panel of this Court considered a predecessor statute of Indiana Code section 9-26-1-1.1, determining the statute did not frame a motorist's duty "in terms of the number of vehicles involved or the number of persons injured." 677 N.E.2d at 82. The Court noted, "Had the legislature chosen to impose separate duties for each vehicle or person injured in such an accident, it could have done so.

However, we discern no such intent in the language of the statute." *Id.* Both convictions could not stand because Nield was involved in only one accident.

[17] In the current case, the version of Indiana Code section 9-26-1-1.1 that is applicable to Warren's offenses requires a defendant to perform certain duties upon the occurrence of an accident. Like the statutes at issue in *Wood* and *Nield*, Indiana Code section 9-26-1-1.1 imposes a duty to remain at the scene of "an accident," regardless of the number of persons injured or killed. Warren was involved in only one "accident" for purposes of the statute, and he could not be convicted twice for leaving the scene of a single accident.

[18] The General Assembly recently amended Indiana Code section 9-26-1-1.1 to reframe a motorist's duties and liabilities under the statute. The new paragraphs of Indiana Code section 9-26-1-1.1 take effect on July 1, 2017:

> (c) An operator of a motor vehicle who commits an offense under subsection (b)(1), (b)(2), (b)(3), or (b)(4) commits a separate offense for each person whose bodily injury or death is caused by the failure of the operator of the motor vehicle to comply with subsection (a).
>
> (d) A court may order terms of imprisonment imposed on a person convicted of more than one (1) offense described in subsection (b)(1), (b)(2), (b)(3), or (b)(4) to run consecutively. Consecutive terms of imprisonment imposed under this subsection are not subject to the sentencing restrictions set forth in IC 35-50-1-2(c) through IC 35-50-1-2(d).

2107 Ind. Acts 1000. It appears the General Assembly is attempting through this amendment to resolve the double jeopardy issues raised by the prior versions of Indiana Code section 9-26-1-1.1. However, we must apply the

version of the statute that was in effect when Warren committed his offenses and, per the holdings in *Wood* and *Nield*, Warren's convictions violate his Indiana constitutional protection against double jeopardy.

[19] The State argues it is well-established that a criminal act that results in multiple victims does not implicate double jeopardy. Yet, it is also well-established that "legislative intent in enacting a statute is the key consideration when determining whether the Double Jeopardy Clause protects against multiple punishments for the same offense under a particular statute." *Nield*, 677 N.E.2d at 81. We have applied the plain language of Indiana Code section 9-26-1-1.1, viewing it as a whole, and the offense set forth in that statute focuses on leaving the scene of "an accident," not causing injuries or death to multiple victims. We remand with instructions to vacate one of Warren's convictions and resentence him accordingly.

## III. Sentencing

[20] Warren argues the trial court cited an improper aggravating circumstance and made inappropriate statements while imposing consecutive sentences. The State responds that the court acted well within its discretion. We choose to address these issues even though we are reversing one of Warren's convictions and remanding for resentencing because these issues may arise again during resentencing.

[21] When a trial court sentences a defendant for a felony, the court must provide "a statement of the court's reasons for selecting the sentence that it imposes" if the

court finds aggravating or mitigating circumstances. Ind. Code § 35-38-1-3 (1983). Sentencing decisions rest within the sound discretion of the trial court and, if a sentence is within the statutory range, it is subject to review only for an abuse of discretion. *Barker v. State*, 994 N.E.2d 306, 311 (Ind. Ct. App. 2013), *trans. denied*. In the context of sentencing, a trial court may abuse its discretion by: (1) failing to enter a sentencing statement at all; (2) entering a sentencing statement that explains reasons for the sentence, but the record does not support the reasons; (3) omitting sentencing factors that are clearly supported by the record and advanced for consideration; or (4) stating reasons that are improper as a matter of law. *See Anglemyer v. State*, 868 N.E.2d 482, 490-91 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (2007).

[22] The trial court determined that the nature and circumstances of the offenses were an aggravating circumstance. Tr. Vol. 2, pp. 52-56. The nature and circumstances of an offense may appropriately be considered as an aggravating circumstance if the trial court takes into consideration facts not needed to prove the elements of the offense. *Hall v. State*, 870 N.E.2d 449, 464 (Ind. Ct. App. 2007), *trans. denied*.

[23] During a discussion of the circumstances of the offenses, the trial court noted "the loss of life, the failure to render any treatment or help, the failure to report the crime." Tr. Vol. 2, p. 56. These factors appear to be elements of the offenses. Ind. Code § 9-26-1-1.1. The court also noted the loss of two lives was "reflected in the level of the offense." *Id.* at 54. The court further stated H.O. was still alive when emergency responders arrived at the scene, and a prompt

report of the collision might have saved her life. In addition, the court noted Warren was drinking prior to the accident and took steps to conceal his involvement after the fact by claiming his truck was stolen. Viewing the court's statement as a whole, the court properly considered facts not needed to prove the elements of the offenses and did not abuse its discretion by citing the nature and circumstances of the offenses as an aggravating factor. *See Gomillia v. State*, 13 N.E.3d 846, 853 (Ind. 2014) (nature and circumstances of offense was a valid aggravating factor even if a component of the factor was improper).

[24] Next, Warren claims the court, in imposing the sentence, stated reasons that are improper as a matter of law. He argues the court was using the hearing to "send a personal philosophical message." Appellant's Br. p. 30. We disagree. During the hearing, the court opined that the sentence for the offense at issue here is far too low, claiming "the legislature has greatly devalued human life." Tr. Vol. 2, p. 53. The court nonetheless further stated it is bound by the maximum penalty and that the legislature determines the range of penalties for criminal offenses. Further, the court did not impose the maximum sentence on Warren, choosing instead to impose consecutive advisory sentences. *See* Ind. Code § 35-50-2-6 (2014) (three years is the advisory sentence for Level 5 felony).

[25] Warren also argues the trial court punished him for the offense of driving while intoxicated, even though he was not charged with that offense, because the court stated if Warren had "tested .05 or greater" at the scene, that could have resulted in him being charged with level 4 felonies. Tr. Vol. 2, p. 54. The court concluded that Warren benefitted from "fleeing the scene and not reporting the

accident." *Id.* at 54. We construe the court's comments as part of the discussion on the nature and circumstances of the offense rather than an attempt to punish Warren for an offense with which he was not charged. In any event, the trial court imposed advisory sentences for Warren's offenses rather than the maximum sentences, which indicates the court was not seeking to improperly punish him.

## Conclusion

For the reasons stated above, we affirm the judgment of the trial court, reverse in part, and remand for further proceedings consistent with this decision.

Affirmed in part, reversed in part, and remanded.

Kirsch, J., and Brown, J., concur.