**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**MICHAEL R. FISHER**
Marion County Public Defender Office
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**LARRY D. ALLEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| DEBB DURBIN, ) | |
| ) | |
| Appellant-Defendant, ) | |
| ) | |
| vs. ) | No.    49A02-1312-CR-1043 |
| ) | |
| STATE OF INDIANA, ) | |
| ) | |
| Appellee-Plaintiff. ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable H. Patrick Murphy, Commissioner
Cause No. 49F07-1301-CM-1422

**August 15, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

Debb Durbin appeals her conviction for criminal trespass, as a Class A misdemeanor, following a jury trial. Durbin presents a single issue for our review, namely, whether the State presented sufficient evidence to support her conviction.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On January 6, 2013, Durbin arrived at the Wyndham Hotel near the Indianapolis airport. Durbin asked the hotel desk clerk, Dambudzo Mudzonga, for a room. Mudzonga asked for a credit card to secure the room, but Durbin did not have a credit card. Mudzonga told Durbin that another option was to obtain a faxed copy of a credit card along with the card owner's identification and signature. Durbin then tried, but failed, to obtain someone else's credit card information to secure a room. Durbin began to yell at Mudzonga, and Mudzonga called for the hotel's security guard.

Michael Moon, the security guard, arrived in the hotel lobby and confronted Durbin, who continued yelling. Moon attempted to get Durbin to quiet down, and he asked her for her identification. Durbin eventually complied and sat down on a couch in the lobby. But after Moon went over to talk to Mudzonga, Durbin started "raising her voice." Tr. at 52. Mudzonga asked Moon to get Durbin to leave the hotel, and, accordingly, Moon asked Durbin to leave the hotel. Durbin refused to leave, even after Moon threated to call the police. Moon then called the police.

When Indianapolis Metropolitan Police Department Officer Gregory Shue arrived at the hotel, Moon told him that he had asked Durbin to leave "several times," and she

had refused. Id. at 93. Officer Shue approached Durbin and asked her whether he could help her try to find someone to help her pay for a hotel room, but Durbin refused his help and refused to give Officer Shue "any information." Id. at 94. Officer Shue then asked Durbin, "multiple times," to leave the hotel, but she refused. Id. at 95. Officer Shue then arrested Durbin.

The State charged Durbin with criminal trespass. A jury found her guilty as charged, and the trial court entered judgment and sentence accordingly. This appeal ensued.

## DISCUSSION AND DECISION

Durbin contends that the State presented insufficient evidence to support her conviction. When considering whether the evidence is sufficient to support an appellant's conviction, we neither reassess witness credibility nor reweigh the evidence, as those tasks are reserved to the fact-finder. Delagrange v. State, 5 N.E.3d 354, 356 (Ind. 2014). Rather, we consider only the evidence most favorable to the conviction, and we will affirm unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. Id.

To prove criminal trespass, as a Class A misdemeanor, the State was required to show that Durbin knowingly or intentionally refused to leave the property of the Wyndham Hotel after having been asked to leave by an agent of the hotel. See Ind. Code § 35-43-2-2. In addition, the State had to prove that Durbin did not have a contractual interest in the property. See id. The term "'contractual interest,' as it is used in the criminal trespass statute, refers to the right to be present on another's property, arising out

3

of an agreement between at least two parties that creates an obligation to do or not to do a particular thing." Taylor v. State, 836 N.E.2d 1024, 1026 (Ind. Ct. App. 2005), trans. denied. Durbin contends that the State failed to prove that Officer Shue was an agent of the hotel and that Durbin did not have a contractual interest in the hotel. We address each contention in turn.

### Agent of Hotel

Durbin first contends that Officer Shue was not an agent of the hotel and was not, therefore, authorized to ask her to leave the hotel. Durbin acknowledges that Moon, "as agent of the hotel, may have asked her to leave," but, Durbin asserts, Officer Shue "never maintained that Ms. Durbin's refusal to comply with that request was the basis for her arrest or that he even knew about the agent's request." Appellant's Br. at 7. But Durbin mischaracterizes the evidence.

As Durbin acknowledges, Moon was an agent of the hotel and asked Durbin to leave. After she refused, Moon called the police. When Officer Shue arrived, Moon told him that he had asked Durbin to leave the hotel "several times" and she had refused to leave. Tr. at 93. The State presented sufficient evidence to show that Durbin knowingly or intentionally refused to leave the property of the Wyndham Hotel after having been asked to leave by an agent of the hotel. See Ind. Code § 35-43-2-2.

### Contractual Interest

Durbin next contends that the State presented insufficient evidence to show that she did not have a contractual interest in the hotel. In particular, Durbin maintains that she was at the hotel "with the intention of securing a room for the night." Appellant's Br.

4

at 9. But the State maintains that Durbin's invitation to seek shelter at the hotel "was revoked once she began to disrupt the business practices of the Wyndham by yelling at the staff and refusing to cooperate." Appellee's Br. at 9.

In support of its contention, the State cites to Olsen v. State, 663 N.E.2d 1194 (Ind. Ct. App. 1996). In Olsen, the defendant had rented a room at the Days Inn in Fort Wayne when he engaged in a loud argument with a hotel desk clerk over a billing dispute.

> Around 3:30 the next morning, Olsen returned to the lobby and began to accost the hotel clerk, yell complaints, bang on doors, and harass guests. The hotel staff asked Olsen to leave the lobby over twenty times, but Olsen responded by running around the lobby and threatening to sue the hotel. The hotel staff then called the police. After arriving, the police asked Olsen to leave the lobby, but Olsen refused. The police then arrested Olsen for criminal trespass.

Id. at 1195. On appeal, we rejected Olsen's contention that he had a contractual interest in the hotel:

> When considered together, we find that there was probative evidence from which the court could have concluded that Olsen did not have a contractual interest in the lobby. . . . The record reveals that the hotel was private property but had a lobby which was open to the public. The hotel invites the general public to enter the lobby for purposes of renting a room and for related business. As a result, Olsen was an invitee on the premises.[] See Burrell v. Meads, 569 N.E.2d 637, 642 (Ind. 1991); Houin v. Burger, 590 N.E.2d 593, 596 (Ind. Ct. App. 1992); J.C. Penney Co. v. Wesolek, 461 N.E.2d 1149, 1153 (Ind. Ct. App. 1984), reh'g granted, 465 N.E.2d 763. An owner has the right to determine whom to invite, the scope of the invitation, and the circumstances under which the invitation may be revoked. See generally State v. Steinmann, 20 Conn. App. 599, 569 A.2d 557, 560 (1990), certification denied, 214 Conn. 806, 573 A.2d 319. Thus, when Olsen disrupted business operations of the hotel and when he became a threat to other patrons, the hotel had a right to ask him to leave. See generally id. Accordingly, there was sufficient probative evidence from which the trial court could conclude that Olsen did not have a contractual

5

interest in the lobby, but rather that he was an invitee whose invitation had been revoked.

Id. at 1196.

Durbin attempts to distinguish the facts of her case from those in Olsen. In particular, Durbin contends that her

> uncontradicted testimony was that she continued to call people and was actually waiting for someone to call her back. She expected to "figure it out." Her business purpose of being in the lobby, her contractual interest, had not expired. Hence, the State did not show that she did not have a contractual interest in the property.

Appellant's Br. at 10 (citation omitted). But Durbin's contention on this issue is merely a request that we reweigh the evidence, which we will not do.

The State presented evidence that Mudzonga, Moon, and Officer Shue all attempted to help Durbin figure out a way to obtain payment to secure a hotel room, but Durbin refused their help and created a loud disturbance in the hotel. The evidence also showed that Durbin was present in the hotel lobby for approximately three hours prior to her arrest. In other words, the evidence shows that Durbin was given more than a reasonable amount of time to try to find a way to pay for a room before she became loud and disruptive and was asked to leave. The State presented sufficient evidence to prove that Durbin did not have a contractual interest in the hotel property at the time of her arrest. See Olsen, 663 N.E.2d at 1196. Thus, the State presented sufficient evidence to support Durbin's conviction.

Affirmed.

BAILEY, J., and PYLE, J., concur.